IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CHARICE SEARCY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:14-cv-24 (MTT) (CHW) |
| | : | |
| CAROLYN W. COLVIN, | : | Social Security Appeal |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**REPORT AND RECOMMENDATION**

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff Charice Searcy's application for benefits. Because the Commissioner's decision is based on the application of proper legal standards and is supported by substantial evidence, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**.

**BACKGROUND**

Plaintiff claims to suffer from hypertension; high blood pressure; diabetes; breast, hip and leg pain; bipolar disorder; osteoarthritis; and back pain, which may stem, in part, from a November 2007 motor vehicle accident. (R. 47, 410). Plaintiff applied for Title II and Title XVI benefits in August 2009, but her applications were denied initially and on reconsideration, (R. 88–89), and a reviewing administrative law judge ("ALJ") found Plaintiff "not disabled" in May 2012. (R. 22–34). The Appeals Council denied review in Plaintiff's case in December 2013, (R. 1–4), and Plaintiff now seeks review before this Court, arguing that the ALJ erred by (1) discounting the opinions of Dr. Carlos Giron and Dr. Foster Brin; and by (2) making vocational findings at steps four and five that were inconsistent with her proposed "Specific

1

Vocational Preparation" rating. Because the record does not support Plaintiff's arguments, it is recommended that the Court affirm.

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, that decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISAIBLITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the

impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## DISABILITY EVALUATION IN THIS CASE

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2008, her alleged onset date. (R. 24). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "pulmonary hypertension, non-insulin dependent diabetes mellitus, obesity, cervical spondylosis with stenosis, lumbar radiculitis with stenosis[,] arthritis, bipolar disorder, [and] panic disorder." (R. 24). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 25). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform:

> [M]edium work . . . with exceptions. [Plaintiff] can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can occasionally climb ladders, ropes, or scaffolds. She requires simple, routine work consistent with a specific vocational preparation of 1 or 2, requiring only simple, work related decisions, performed in an environment with few, if any, workplace changes. She can tolerate up to occasional interaction with the general public, co-workers, and supervisors.

(R. 26)

At step four, the ALJ found that Plaintiff could perform her past relevant work as a nurse aid and security guard. (R. 32). The ALJ also made alternative step-five findings, though, and determined that Plaintiff could also perform the requirements of representative occupations like

"laundry worker" and "hand packager." (R. 33). Based on both her step-four and step-five findings, the ALJ found Plaintiff "not disabled" within the meaning of the Social Security Act.

## ANALYSIS

Plaintiff argues that the ALJ erred by improperly assessing the opinions of Dr. Giron, a physician, and Dr. Brin, a psychiatrist. (Doc. 11, pp. 5–7). Plaintiff also argues that the ALJ erred in finding, at steps four and five, that Plaintiff could perform jobs with higher "Specific Vocational Preparation" ratings than those proposed by the ALJ in her RFC finding. (Doc. 11, pp. 4–5). As discussed below, the ALJ properly assessed Dr. Giron's and Dr. Brin's opinions, and substantial evidence supports the ALJ's step-four and step-five findings. As a result, the Commissioner's decision should be affirmed.

**(1) Medical Evidence**

(a) Dr. Giron's Opinion

Only two medical records are on file from Dr. Carlos Giron. The first is a report based on a November 2008 consultative "pain management" examination. (Ex. 7F). In that report, Dr. Giron noted that Plaintiff's "pain complaints stem[med] from a motor vehicle accident in which [Plaintiff] was involved on 11/13/07." (R. 410). Dr. Giron also noted that there "ha[d] been an interval change" since Plaintiff's last lumbar MRI, dated "3/05/05," and that Plaintiff's most recent lumbar MRI dated "7/25/08" showed: "an L5-S1 broad-based disk protrusion extending to the left and right with possible mass effect on the S1 nerve roots bilaterally." (R. 414).

Dr. Giron's second record is a questionnaire dated September 2009. (Ex. 36F). In that questionnaire, Dr. Giron opined that "[a]s of 11-5-08," Plaintiff was disabled due to lumbar pain, which was exacerbated by "lying down," and by "weight bearing including standing [and]

4

walking." (R. 717). Dr. Giron's September 2009 questionnaire, which was completed around ten months after his November 2008 examination, was not based on a second examination. Additionally, Dr. Giron expressly noted in his questionnaire that he was "unable to state that [Plaintiff remained disabled] as I last saw [Plaintiff] on 11-5-08." (R. 717).

Plaintiff argues that the ALJ erred by assigning "little weight" to Dr. Giron's questionnaire, but substantial evidence supports the ALJ's decision. As noted by the ALJ in her opinion, (R. 31), Dr. Giron completed his questionnaire nearly a year after performing his consultative examination. *See* 20 C.F.R. § 404.1527(c)(2) (noting the importance of length, nature, and extent of the treatment relationship, as well as the frequency of examination). Furthermore, the record indicates that Dr. Giron examined Plaintiff only once, and therefore, it is not at all clear that Dr. Giron is a "treating physician," as Plaintiff appears to contend. *See, e.g.*, *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("the reports of Drs. Davis and Simpson . . . are not entitled to deference because as one-time examiners they were not treating physicians").

Even if Dr. Giron was a "treating physician," though, the ALJ adequately articulated "good cause" to discount Dr. Giron's questionnaire. *McSwain*, 814 F.2d at 619 ("The opinion of a treating physician is entitled to substantial weight unless 'good cause' is shown to the contrary"). The ALJ specifically noted that several of the relevant findings in Dr. Giron's September 2009 questionnaire were inconsistent with his own November 2008 examination findings. For example, although Dr. Giron suggested, in his questionnaire, that Plaintiff could only "occasionally" lift or carry "less than 5 pounds," Dr. Giron's examination report contains objective findings that Plaintiff's "strength testing [was] 5/5 bilaterally and symmetrically." (R. 413). The ALJ also noted that other evidence in the record also contradicted Dr. Giron's

5

questionnaire. In particular, the ALJ noted that Dr. Ahmed Yousef found, in an October 2009 "Range of Motion Questionnaire," (Ex. 12F), that Plaintiff could lift up to 20 pounds despite her allegations of back pain. (R. 538). The ALJ also discussed a November 2009 MRI that shows "no evidence of a focal disc extrusion," and only "mild" stenosis and disc degeneration. (R. 29, 563). Because these findings by the ALJ constitute "adequately articulated good cause" sufficient to discount Dr. Giron's opinion, and because Dr. Giron was, moreover, not a treating physician, the ALJ did not err by discounting Dr. Giron's questionnaire.

(b) Dr. Brin's Opinion

Plaintiff also argues that the ALJ erred by failing to discount, on the record, the opinion of Dr. Foster Brin, a psychiatrist. (Ex. 23F). For the same reasons discussed above, it does not appear that Dr. Brin is a "treating psychiatrist," as Plaintiff contends, because the record indicates that Dr. Brin saw Plaintiff only once, on March 25, 2010. Additionally, even though both the ALJ and Plaintiff referred to "Dr. Brin's opinion," the exhibit in question actually consists of records from at least three different sources at River Edge Behavioral Health: Dr. Brin; Vanessa Jones, a "licensed professional counselor;" and Sandra Krueger, a "licensed practical nurse."

Plaintiff does not explain what River Edge findings support her disability claim, but she does cite a Global Assessment of Functioning or "GAF" score of 45, (R. 635), and some unpublished Eleventh Circuit authority suggests that an ALJ's failure to expressly evaluate a GAF score of 45 may constitute a reversible error. *See McCloud v. Barnhart*, 166 F. App'x 410, 418–20 (11th Cir. 2006). This unpublished authority appears to be based on the Fourth Edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), however, and as

6

Commissioner notes, the Fifth Edition ("DSM-V") has abandoned the use of GAF scores. As a result, it is unclear whether the reasoning in cases like *McCloud* remains intact.

Even if *McCloud* controls, however, remand is not warranted on the facts in this case. "Dr. Brin's opinion," all of the records of which are dated March 25, 2010, itself contains inconsistent GAF scores: it shows scores of both "45" and "55." (R. 635, 638). Other psychological evidence in the record supports the latter score. The consultative examination notes of Dr. Elizabeth Coleman, for example, show a GAF score of "57," despite diagnoses of "mood disorder" and "Personality Disorder NOS." (R. 606). Finally, other psychological findings from "Dr. Brin's opinion" also support a higher GAF score. A report titled "Locus," for example, indicates that Plaintiff had only mild functional impairments. (R. 620-21). Similarly, a report signed by Dr. Brin himself indicates that Plaintiff had "coherent" thought processes and that there was no evidence of an impairment in thought content. (R. 634). Given these findings, and given the limited value of GAF scores in general,[1] the ALJ's findings are supported by substantial evidence.

**(2) Specific Vocational Preparation Rating**

A Specific Vocational Preparation or "SVP" rating describes "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."[2] Plaintiff argues that the ALJ erred by inconsistently assigning an SVP rating of 1 or 2, (R. 26), while also finding, at step four, that Plaintiff could return to her past relevant work as a "Nurse aid," SVP 4, and as a "Security guard," SVP 3. Because Plaintiff previously performed these jobs for durations sufficient to satisfy the relevant SVP requirements, though, and because Plaintiff bore the burden

---

[1] *See, e.g.*, *Wind v. Barnhart*, 133 F. App'x 684, 692 n.5 (11th Cir. 2005).
[2] *See* http://www.occupationalinfo.org/appendxc_1.html#II.

of demonstrating her own disability at step four, there is no basis to conclude that the ALJ erred. *See, e.g.*, *Ehimika v. Colvin*, 525 F. App'x 661, 662–663 (10th Cir. 2013) ("we conclude that [claimant's] earning records show that she performed her past job . . . long enough to meet the duration requirement").

A job with an SVP rating of 3, like "Security guard," requires "[o]ver 1 month up to and including 3 months" of preparation time. Plaintiff worked as a security guard for "Oasis for Women" from 2007 to 2009, (R. 295), so she easily satisfies the relevant SVP duration requirement. Similarly, Plaintiff's work history also satisfies the SVP 4 rating for "Nurse aid," which requires "[o]ver 3 months up to and including 6 months" of preparation time. The record indicates that Plaintiff worked as a certified nurse assistant (i) from 2001 to 2003 for "Sunbridge of Lemon Grove;" (ii) for "6 months" in 2006 for "Brian Center of Jeffersonville;" and (iii) from 2006 to 2007 for "Peak Nursing Home." Thus, regarding both her security guard and nurse aid jobs, the record indicates that Plaintiff already has sufficient vocational preparation such that she could resume those jobs with little or no further preparation.

Plaintiff also argued that the ALJ erred in finding, at step five, that Plaintiff could perform work as a "Laundry worker . . . (SVP-4)," (R. 33). As the Commissioner notes, the ALJ appears to have made a clerical error as "Laundry worker," #361.684-014, in fact has an SVP rating of 2. This clerical error is, of course, not grounds for reversal, and additionally, even if the ALJ had erred at step four, the ALJ's step five findings—the ALJ found that Plaintiff could work both as a laundry worker and as a hand packager, SVP 2—would render that error harmless.

## **CONCLUSION**

After a careful consideration of the record, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned WITHIN FOURTEEN (14) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 12th day of January, 2014.

                                              s/ Charles H. Weigle
                                              Charles H. Weigle
                                              United States Magistrate Judge